UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JARED HALE,

     Plaintiff,

v.                               Case No.:    5:17-cv-265-RH-GRJ

SCHOOL BOARD OF BAY COUNTY,
FLORIDA and WILLIAM HUSFELT,
in his individual capacity,

     Defendants.
_____/

## DEFENDANTS' CONSOLIDATED MOTION FOR ATTORNEYS' FEES AND SANCTIONS

     Pursuant to Rule 54 of the Federal Rules of Civil Procedure and Rule 54.1 of the Local Rules of the United States District Court for the Northern District of Florida, Defendants, The School Board of Bay County, Florida, and William Husfelt, in his individual capacity, hereby move this Court for the entry of an order confirming entitlement to attorneys' fees.  Specifically, Defendants seek in this bifurcated procedure a determination that they are entitled to a fee, prior to any determination of the amount of an award that may be granted.  The grounds for the respective portions of this motion are set forth below.

## FACTUAL BACKGROUND

1.     Plaintiff, Jared Hale, sued the Defendant School Board of Bay County, Florida ("School Board") in two Counts for the Tortious Interference of Business Relationship and for First Amendment Retaliation based upon his relationship to his parents.

2.     Jared Hale's cause of action against Defendant William Husfelt ("Husfelt") mirrored the claims against the School Board – Tortious Interference of a Business Relationship and First Amendment Retaliation based upon his familial relationship with his parents.

3.     The Court granted final summary judgment in favor of all Defendants on August 2, 2018. The adjudication by this Court on all claims pursuant to Defendants' Motions for Summary Judgment is a final adjudication of no liability on all claims of Plaintiff.

4.     Defendants are entitled to attorneys' fees against Plaintiff alone on the state law claims of Tortious Interference pursuant to the Proposal for Settlement procedures set forth in Florida Statute §768.79 and Florida Rules of Civil Procedure 1.442.

5.     Defendants are entitled to attorney's fees against Plaintiff alone on the First Amendment claims because Defendants were the prevailing parties under 42 U.S.C. §1988.

6.     Defendants are entitled to attorney's fees and costs against Plaintiff's counsel and her law firm alone as a sanction pursuant to 28 U.S.C. §1927.

7.     Pursuant to Rule 11, Federal Rules of Civil Procedure, Defendants also request this Court enter non-monetary sanctions against Plaintiff's counsel sufficient to deter future vexatious conduct.

WHEREFORE, Defendants move this Court for an order granting fees and costs and providing for the timeline to submit supporting documentation of the amounts thereof, and for an order imposing non-monetary sanctions against Plaintiff's counsel.

## **MEMORANDUM OF LAW**

Pursuant to Local Rule 7.1(E), Defendants offer the following memorandum of law in support of their motion.

## **I.    FEES AGAINST PLAINTIFF PURSUANT TO PROPOSAL FOR SETTLEMENT UNDER FLORIDA STATUTE, §768.79, and FLORIDA RULE OF CIVIL PROCEDURE 1.442**

Florida Statute §768.79 provides that if a defendant files an offer judgment which is not accepted by the plaintiff within 30 days then the defendant shall be entitled to recover reasonable costs and attorney's fees from the date of the filing of the offer if the judgment is one of no liability.  The adjudication by this Court on all claims pursuant to Defendants' Motions for Summary Judgment is a final adjudication of no liability on all claims of Plaintiff.

3

Defendants previously served upon Plaintiff Proposals for Settlement on all counts in separate proposals. The School Board proposed to settle the Tortious Interference claim for $250.00 and the separate First Amendment claim for $250.00. Husfelt individually proposed to settle both claims separately, and his offers were only $100.00 per claim. Copies of the four Proposals for Settlement are attached here to as composite Exhibit "1." Plaintiff did not accept any of the offers. More than 30 days have run since the offers were made. Pursuant to the above statutory and procedural guidelines, Plaintiff, Jared Hale, is responsible for attorneys' fees incurred from the date of the offers upon an adjudication of no liability. *Anderson v. Hilton Hotels Corp.,* 202 So. 3d 846, 858 (Fla. 2016) ("[T]he plain language of both section 768.79 and Florida Rule of Civil Procedure 1.442 indicates that [plaintiff's] entitlement to attorneys' fees was actualized after he submitted sufficient offers and obtained satisfactory judgments in his favor.") The liability for fees begins on January 19, 2018 for those offers made by the School Board, and January 30, 2018 for those offers made by Husfelt. Defendants are entitled to fees for the state law claims only under the above authority and circumstances.

For the foregoing reasons Defendants School Board and Husfelt request the entry of an order confirming their entitlement to attorneys' fees against Plaintiff, Jared Hale, for the state law claims in Counts I and II pursuant to their successful Proposals for Settlement.

4

## II.    FEES AGAINST PLAINTIFF UNDER 42 U.S.C. §1988

Plaintiff brought claims against Defendants School Board and Husfelt in Counts III and IV pursuant to 42 U.S.C. §1983 and claimed he was entitled to attorneys' fees for the alleged retaliation of his First Amendment rights pursuant to 42 U.S.C. §1988.   (Complaint, ECF.1, paragraphs 2, 44, 56, 57, 63, 70 and subparagraph (e) of his prayer for relief).   Defendants in their Answer claimed entitlement to attorneys' fees and costs under any statute or rule for prevailing parties and/or frivolous claims.   (ECF.6 and 7).

42 U.S.C. §1988 provides that a District Court may award attorneys' fees to a prevailing defendant when the "plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Company v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421 (1978); *Turner v. Inzer*, No.4:11cv567, 2013 WL 4648319 (N. D. Fla. Aug. 29, 2013), *aff'd.* 597 Fed. Appx. 621 (11th Cir. 2015).   The Eleventh Circuit has delineated three factors to determine the frivolity of a case: (1) whether the plaintiff established a *prima facie* case, (2) whether the defendant offered to settle the case, and (3) whether the trial court dismissed the case prior to trial.   *Sullivan v. School Board of Pinellas County*, 773 F. 2d 1182, 1189 (11th Cir 1985).   These factors, however, are deemed to be "general guidelines only, and not hard and fast

rules.  Determinations regarding frivolity are to be made on a case-by-case basis."
*Id*.

A. <u>Plaintiff did not establish a *prima facie* case</u>

With regard to the first *Sullivan* factor, this Court granted summary judgment because Plaintiff did not establish a *prima facie* case against either Defendant for First Amendment Retaliation.  There is no legal basis for a First Amendment claim against Defendant Husfelt because any alleged actions on his part are clothed with qualified immunity.  *Pollo v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Gaines v. Wardinski*, 871 F. 3d 1203, 1206 (11th Cir. 2017).  Plaintiff's counsel did not acknowledge or address the issue of qualified immunity, in particular the *Gaines* decision, in the response to Defendant Husfelt's Motion for Summary Judgment.  Plaintiff's counsel eventually agreed during the summary judgment hearing that the First Amendment claim against Defendant Husfelt should be abandoned given that *Gaines* predated the filing of Hale's lawsuit.  Her agreement, however, came only after providing multiple varying explanations for failing to address the case[1] in

---

[1] Plaintiff's counsel initially offered her belief that the *Roberts* case was the better reasoned decision and gave her grounds to seek to overturn *Gaines,* but later indicated that she had not reviewed the summary judgment filings, and thus had not learned of the *Gaines* case (or perhaps the failure to address it), until the night before the hearing and that she had already terminated the contract attorney responsible for the legal research and writing.

Plaintiff's summary judgment response and after receiving an *ore tenus* judicial CLE on the clear applicability of the *Gaines* case to Plaintiff's claim against Husfelt.

With regard to the First Amendment Claim against the Defendant School Board, there was no evidence that the School Board was responsible for Jared Hale's termination as the head football coach or teaching position at the North Bay Haven Charter School ("Charter School").  That decision was made entirely by members of the Charter School, and in particular Principal Meredith Higgins.

To the extent Plaintiff pursued a First Amendment claim against the School Board as to the Bay High School history teaching position, Plaintiff presented no evidence that Husfelt was involved in this decision and under *Monell* the final decision maker in this instance would be the School Board, not Husfelt. There was also no evidence whatsoever to show that the School Board decided <u>not</u> to make a decision affecting Hale's application as a history teacher.  For Plaintiff to show that Husfelt caused the abandonment of the alleged practice of allowing a coach to select a teacher, Plaintiff would first have to show a conspiracy within the interview committee, also involving Husfelt, and also involving the School Board. There was absolutely no evidence to confirm this wild dream had any factual basis.

The Court noted that while a plethora of pleadings, depositions, and other documents were offered in opposition to Defendants' Motions for Summary Judgment, they involve matters that have nothing to do with the issues or claims.

Such "evidence" was based upon conjecture and speculation, and wholly inadequate to rebut direct positive evidence that there was no retaliation against Jared Hale because of his familial relationship with his parents.  Notably, during the hearing and in the face of having submitted well over a thousand pages of documents, pleadings, and other materials, Plaintiff's counsel admitted that there was no direct evidence that Husfelt, individually or in his official capacity, had anything to do with the claims being made in the case. Non-meritorious allegations do not establish a *prima facie* case. The first *Sullivan* factor, therefore, was not met by Plaintiff.

B. Defendants made only nominal Proposals for Settlement

With regard to the second *Sullivan* factor, concerning whether Defendants have offered to settle the claims made against them, the only offers to settle by Defendants were submitted to Plaintiff on January 19 and 30, 2018, four months before the end of discovery, by way of Proposals for Settlement as described previously.  The offers made by Defendant School Board for the settlement of all claims against it totaled $500.00.  The settlement offers by Defendant Husfelt totaled $200.00. Attorney's fees are "especially warranted" if a plaintiff rejects a nominal settlement offer and instead continues to litigate frivolous claims. *Cordoba v. Dillard's, Inc.*, No.6:01cv1132, 2003 WL 21499011, at *5 (M.D. Fla. June 12, 2003), *rev'd on other grounds*, 419 F. 3d 1169 (11th Cir. 2005).  The total of $700.00

for the settlement of all claims against all Defendants is not even a cost-of-defense settlement offer; indeed, it is a nominal offer at best.

C. <u>The court dismissed the claims before trial</u>

Regarding the third *Sullivan* factor, which goes hand-in-hand with the first factor, Defendants' Motion for Attorneys' Fees is supported because all claims against all Defendants were dismissed via summary judgment prior to trial. See *Sullivan*, 773 F. 2d 1189 (noting that frivolity findings are typically sustained in cases decided on summary judgment due to a lack of evidence to support the plaintiff's claims); see also *Wigfall v. St. Leo University, Inc.*, No.8:10cv2232T24, 2012 WL 3854551, at *5 (M. D. Fla. Sept. 5, 2012) ("If a court grants a motion for summary judgment in favor of defendant, the prevailing party defendant satisfies the third factor of *Sullivan"*).

The claims made by Plaintiff against Defendants School Board and Husfelt, like the claim made against the defendant in *Turner*, supra, were "simply devoid of any evidence" sufficient to give merit or credence to Plaintiff's allegations. *Turner*, at *3. Defendants, therefore, submit that they have met both the *Christiansburg* and *Sullivan* requirements for establishing entitlement to attorneys' fees as prevailing defendants pursuant to 42 U.S.C §1988. Plaintiff Hale's claims against all Defendants were "frivolous, unreasonable, and without foundation" both in law and in fact.

For the foregoing reasons Defendants School Board and Husfelt request the entry of an order confirming their entitlement to attorney's fees against Plaintiff, Jared Hale, on his 1st Amendment claims in Counts III and IV pursuant to 42 U.S.C. §1988.

### III.   Fees against Marie A. Mattox and her law firm under 28 U.S.C. 1927

28 U.S.C §1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The word "vexatious" is not defined in the statute.  While there is little caselaw in the Eleventh Circuit articulating the necessary standard for an award of attorneys' fees under §1927, subjective bad faith is not a requirement.  A District Court may assess attorneys' fees under this statute against counsel for a willful abuse of the judicial process by "conduct tantamount to bad faith." *Avirgan v. Hull*, 932 F. 2d 1572, 1582 (11th Cir. 1991).  Precedent in the Eleventh Circuit allows a District Court to interpret the term "vexatious" to include frivolous, unreasonable or without foundation even though not brought in subjective bad faith. *United States v. Gilbert*, 198 F. 3d 1293, 1298 (11th Cir. 1999).  The Eleventh Circuit has noted that "[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton*, 15 F. 3d 1212, 1214 (11th Cir. 1998).

Importantly, the Eleventh Circuit has also held that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avigran*, 932 F. 2d at 1582.

Sanctions imposed under 28 U.S.C. §1927 are designed to serve as a deterrence against attorneys for bad faith conduct and to impose upon counsel the responsibility to act in good faith throughout all phases of litigation. Its purpose, quite simply, is to discourage frivolous litigation and abusive practices by attorneys and to make those who create unnecessary financial burdens bear them. *O'Rear v. American Family Assurance Company of Columbus, Inc.*, 144 F. R. D. 410, 413 (M. D. Fla. 1992). As noted otherwise:

> In the words of one court of appeals, "[s]uits are easy to file and hard to defend. The best way to control unjustified tactics in litigation is to ensure that those who create costs also bear them. When an attorney recklessly creates needless costs the other side is entitled to relief."

*Norelus v. Denny's, Inc.*, No.94cv2680, 2000 WL 33541630 (March 21, 2000); rev'd on other grounds by *Amlong & Amlong, P.A. v. Denny's, Inc.,* 11th Cir. 2007) (Quoting In re *TCI Ltd* 769 F. 2d 441, 445 (7th Cir. 1985)).

The plain language of the statute imposes three requirements for an award of sanctions; 1) the offending attorney must engage in "unreasonable and vexatious" conduct; 2) that "unreasonable and vexatious" conduct must be conduct that multiplies the proceedings; and 3) the dollar amount of the sanctions must bear a

financial nexus to the excess proceedings.  *Peterson v. BMI Refractories*, 124 F. 3d 1386, 1395 (11th Cir. 1997); see also, *McMahan v. Toto*, 256 F. 3d 1120, 1128 (11th Cir. 2001).

    A. <u>Unreasonable and vexatious conduct</u>

Analyzing the first requirement, that the attorney must engage in "unreasonable and vexatious conduct," the claims against Defendants herein by Plaintiff Hale are indeed frivolous and without foundation.  Beginning with Plaintiff's Complaint, it is alleged in Paragraph 13 that "Based upon information and belief" there exists at least one witness who would confirm that the Charter School Principal, Meredith Higgins, made the following statement: "**Husfelt forced me to do it**" (referring to the termination of Hale as the football coach at the Charter School).  Discovery, which was voluminous, unearthed absolutely no evidentiary foundation for this quoted comment.

Plaintiff himself had no personal knowledge of any admissible evidence supporting his claim. [ECF.40-3, p.20 "No proof.", p.26]. The majority of his "evidence," including the basis for his claim that Higgins stated "Husfelt forced me to do this," came solely from his mother. [ECF.40-3, p.14]. This statement was attributed to Lisa Rossman. Lisa Rossman was deposed on February 2, 2018, and flatly denied any conversation with Meredith Higgins regarding Jared Hale's termination and any remark of the kind. [Exhibit 2, Lisa Rossman Dep., pp.8-9]

Plaintiff's mother was present for at least one meeting with his counsel. [ECF.40-3, p.19]. In her deposition, Julie Hale acknowledged that she had no personal knowledge of Defendant Husfelt or the School Board having any involvement in Plaintiff's termination from North Bay Haven or in his failure to secure the history teaching position with Bay High School. [ECF.43-12, pp.43-46, 59-61]. According to Julie Hale's testimony, the remark from Meredith Higgins that she was "forced" to terminate Jared was allegedly made by Higgins to Scott Rossman who allegedly conveyed it to Jared Hale. [ECF.43-12, pp.29-31] Jared Hale's testimony is that he spoke with both Scott Rossman and Jason Shoot and that both said they had spoken with "people" who said Husfelt was behind his termination but that they never gave him a name. [ECF.40-3, pp.15, 17]

This court needs to know that Jared Hale's claim against the School Board and Husfelt is Chapter II of a saga initiated by his parents and his counsel through their litigation several years ago against the same Defendants. (See Case No. 5:16-CV-104-MW-GRJ). That litigation too alleged, in a complaint that this Court should review for context (all 297 paragraphs and 63 pages of the same), that the School Board and Husfelt conspired against them and wrongfully terminated both parents. The parents' lawsuit was resolved in March 2017 by settlement driven by the insurer for the School Board.

This lawsuit was filed six months later despite the lack of evidence. Prior to filing the lawsuit, Plaintiff's counsel had available to her (and indeed she utilized in response to Defendants' motions for summary judgment) the deposition testimony of multiple witnesses from the parents' lawsuit including James Hale, Julie Hale, Julie Ducharme, and William Husfelt. [See ECF.40]. In January 2017, though wholly unrelated to the claims in the parents' litigation, Plaintiff's counsel interrogated Mr. Husfelt on the issue of Jared Hale's termination from North Bay Haven at which time he advised her that he had nothing to do with it and that he learned of the termination from reading the paper. [ECF.42-5, pp.91-92]. The earliest adverse employment action about which Plaintiff complains occurred in January 2015. The statute of limitations thereon would have run in January 2019. There was no pressing need to have filed the lawsuit in November 2017.

Bay County School Board is a public entity and, under Florida law, virtually all of its records are open to the public to include emails, telephone records, meetings, agendas, minutes, employee applications, applicant interview score sheets, and hiring paperwork. Even if counsel were somehow unaware of the lack of factual support for the claims brought at the time of filing the lawsuit in November 2017, as of early February 2018, counsel had: Plaintiff's sworn testimony (February 1, 2018), the sworn deposition testimony of witnesses Adams, Gainer, Lisa Rossman, and Carl Stockton (February 2, 2018), and sworn statements of witnesses

Bryan Normand, James Burant, Tommy St. Amant, Bill Thomas, and Julie Ducharme (February 24, 2018). All of this information was known to Plaintiff's counsel within the 30-day period following service of Defendants' proposals for settlement. Ms. Mattox herself, not one of her associates, took the sworn statements and attended the depositions. Plaintiff's counsel verbally advised defense counsel months ago that she felt that she had little basis for the claims regarding the Charter School termination. See Exhibit 3 (confirming in writing).  In March 2018, counsel for witnesses Shoots and Scott Rossman made it clear the journalists would not testify based on a claim of privilege.

Not only Plaintiff but Plaintiff's counsel (and Plaintiff's parents) failed to make a reasonable investigation of facts at the outset.  Plaintiff was terminated by his Charter School Principal, not William Husfelt or the School Board.  Those involved in the decision confirmed that it was totally inside the boundaries of the Charter School that this decision was made.  Those involved in the decision further confirmed that neither Husfelt nor the School Board had any involvement whatsoever in the termination of Plaintiff as the football coach.  Plaintiff's mother Julie Hale herself was specifically told this very fact by Meredith Higgins in the Spring of 2015, more than two years *before* the lawsuit was filed. [Higgins Dep., p.68].

Regarding Plaintiff's claim against the School Board for Tortious Interference at the Charter School, there was no evidence at all that Husfelt had anything to do with Meredith Higgins' decision.  Higgins was the decision maker – not Husfelt, not the School Board – and the only individual with whom Higgins consulted were other members of the administration at the Charter School.  The hearsay reference to a statement that Higgins is alleged to have made that someone "above me" made the decision can only reasonably be applied to the CEO, Tim Kitts, as neither Husfelt nor the School Board were above her in the hierarchy of the Charter School.  There were no reasonable inferences that could support any claim made by Plaintiff against the School Board and the continued reliance upon speculation or supposition was legally inadequate and should be known by experienced counsel.  Further, if as Plaintiff contended Husfelt did interfere in such a capacity, he clearly did so individually, not as a representative of the Defendant School Board.

Plaintiff and his counsel, however, determined to forge ahead and to file the suit without making a reasonable inquiry into both the law and the facts surrounding their dispute with Defendants.  No one on Plaintiff's side contacted the Charter School Principal, Assistant Administrator, Athletic Director or CEO before filing suit to confirm the amorphous pipe dream that Husfelt or the School Board were behind Plaintiff's termination.  28 U.S.C §1927 compels attorneys to comply with their obligation to "make reasonable inquiry into both the law and the facts

16

surrounding their clients' disputes prior to initiating a lawsuit." *Colorado Chiropractic Counsel v. Porter Memorial Hospital*, 650 F. Supp. 231, 239 (D. C. Co. 1986). A few phone calls by Plaintiff's counsel would have confirmed that there was no claim against either Defendant for the Charter School termination.

Plaintiff's counsel also forged ahead with claims against Defendant Husfelt individually with respect to the Bay High School position although they too were factually unfounded. The *Gaines* decision made clear that Husfelt, by law, had qualified immunity. And this Court found no proof of Tortious Interference with this position. Plaintiff did not show that he would have received the job but for the interference; out of nine applicants he was 5th in rank after the interview for the position; there was no evidence that the teachers on the committee colluded with Defendant Husfelt such that they were "puppets" of Husfelt in making that decision to rank Plaintiff 5th; the scoresheets confirm and document where Plaintiff fit in in terms of his interview; there was no showing of any pretext in making the decision not to hire him for the Bay High School position. It was disingenuous for counsel to suggest that Plaintiff received the lowest score for character when the question itself included how well he answered questions during the interview process itself. In short, there was no evidence to support the Tortious Interference claim of Plaintiff against Husfelt for the Bay High School position.

It was frivolous for Plaintiff's counsel to argue at the summary judgment hearing that the School Board interfered with the Bay High School history position when she had stipulated otherwise (ECF. 10).  Even so, there was no legal or factual basis to support the same.  The School Board could not interfere with the Bay High School contract because it would be interfering with its own contract, which precludes a claim for Tortious Interference.   That is a simple matter of law. Regarding the First Amendment claim against the School Board as to the Bay High School position, the School Board correctly understood this had been abandoned and so noted in its summary judgment motion.  Defendant Husfelt noted it several times in footnotes in his motion for summary judgment.  Plaintiff's counsel did not address or dispute that there was no such claim in her Response to either Summary Judgment Motion.  At the summary judgment hearing however, counsel claimed it was at issue, thus adding another moving target for the defense and the Court to address.  As noted earlier, even assuming this new claim was in play, the School Board would still prevail because Husfelt was never shown to have been involved in this decision and under *Monell* the final decision maker in this instance would be the School Board, not Husfelt.

Not only is there an obligation on the part of counsel to conduct an investigation to confirm that evidence will bear out the claims before the claim is filed, there is also a continuing obligation on the part of the attorney to dismiss

18

claims that have no factual or legal basis.  Fed.R.Civ.P. 11; R. Regulating Fla. Bar 4-3.1; and *Avirgan v. Hull*, 932 F. 2d 1572, 1582 (11th Cir. 1991) (stating that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest").  Plaintiff's claims have never had either a factual or legal basis. Continuing to prosecute a claim when there is no factual or legal basis is vexatious and wanton.  Discovery in this case revealed early on that there was no legal or factual basis for the claims being made and yet counsel for Plaintiff continued to plow forward, continued to fire round after round of discovery requests, inclusive of a request for production of hundreds of thousands of emails. During an earlier discovery hearing regarding the request for the production of these emails, Plaintiff's counsel agreed that even if produced these emails would not likely show any meaningful result.  Counsel's assertion that there was a need to depose all School Board members, who had never been listed as potential witnesses by anyone, was also unwarranted and punitive towards Defendants.  Plaintiff's counsel had no basis for the claims regarding the Charter School termination or the Bay High School history position.  Yet she not only continued to litigate, demand discovery, and argue in favor of her position through the Summary Judgment Motions, she never dismissed the claims.

The burden upon the Court and upon Defendants in this instance imposes time and effort that frustrate legitimate claims and obstruct the normal judicial process.

This case has the earmarks of judicial extortion as noted in the case of *Colorado Chiropractic Counsel v. Porter Memorial Hospital*, 650 F. Supp. 231, 239 (D. C. Co. 1986):

> Further, the record in this case and the surrounding circumstances are such that one may seriously consider whether there is any legitimate purpose to this lawsuit. *Porter*, at 239.

This case presents a suit intended to coerce and intimidate Defendants into a course of action by virtue of the suit itself, rather than one intended to redress a legitimate controversy. Even if this were not the intent of counsel, it was the duty of counsel to evaluate and pursue only meritorious claims and to be candid regarding adverse caselaw. R. Regulating Fla. Bar 4-3.1 and 4-3.3.

This Court commented during the hearing on the Motion to Compel the production of hundreds of thousands of emails filed by Plaintiff's counsel that it appeared that Plaintiff lost one job, Plaintiff did not get another job, and that he was now on a mission to punish Defendants. The Court was correct in that analysis. Jared Hale's mother and father (and on at least one instance his wife) attended each deposition taken in this case, with Plaintiff's mother passing notes to Plaintiff's counsel throughout the deposition process. Plaintiff's parents conferenced with Plaintiff's counsel about Plaintiff's case. Plaintiff's parents were invested in this case in an unhealthy manner. Jared Hale's attorney is without question bright and well-versed in this type of litigation. She had multiple opportunities and an unending

obligation to tell her real client in the matter, Jared Hale, that regardless of what animus his parents had and continue to have against Husfelt and the School Board, his claim was baseless. R. Regulating Fla. Bar 4-2.1. Instead she plowed forward with pleadings, discovery requests, depositions and argument in the face of a case with no facts or law to support her crusade.  She failed not only her client by not taking control of the case and dismissing the causes of action, but the Court and Defendants as well.  This is bad faith and should be sanctioned.

Based upon the above it is clear that Plaintiff's counsel engaged in unreasonable and vexatious conduct, conduct that was frivolous from its inception and without foundation then, or at any point thereafter.  The claims against Defendants were based only upon the wisps of inadmissible rumor and hearsay, supplied primarily by Plaintiff's mother.  Alternatively, if Plaintiff's counsel initially made no reasonable investigation of her own but then learned in discovery that Jared Hale's allegations were inaccurate, she was under a duty to dismiss those allegations or to move to amend the complaint and exclude those allegations, which she failed to do.  *Avigran*, 932 F. 2d at 1582.  The failure to do so is "tantamount to proceeding with a litigation in bad faith."  *Bakari v. City of Byron*, No.5:04cv46, 2006 WL 42140, at *3 (M. D. GA. Jan. 6, 2006).

B. <u>The unreasonable and vexatious conduct of Plaintiff's counsel multiplied the proceedings</u>

Second, the attorney's conduct must multiply the proceedings. The misrepresentations and inaccuracies in Plaintiff's Complaint, Rule 26 disclosures and discovery responses herein have caused both Defendants to engage in extensive discovery and investigation in order to flush out the truth of the allegations from the time that the Complaint was filed through the summary judgment arguments. (e.g. "Husfelt forced me to do it."). At each turn it became apparent that there was no factual basis to support the claims that the School Board or Husfelt tortiously interfered with the coaching contract at the Charter School. At each turn it became apparent and clear that there was no retaliation regarding that coaching position because of the relationship Plaintiff had with his parents. At each turn, it became apparent that there was no factual basis to support the claim that Husfelt tortiously interfered with or was guilty of retaliation regarding the Bay High School teaching position. At each turn it was also apparent that there was no factual basis to support any claim that the School Board tortiously interfered with or retaliated against Plaintiff regarding the Bay High School teaching position, especially when counsel stipulated there was no allegation of such at the initial stages of the pleading and through the summary judgment hearing.

C. <u>The dollar amount of the sanctions must bear a financial nexus to the excess proceedings</u>

Finally, the dollar amount of the sanction must not exceed the cost, expenses and attorneys' fees reasonably incurred because of Plaintiff's vexatious conduct. Defendants request that this Court confirm they are entitled to sanctions against Plaintiff's counsel and her law firm that do not exceed such costs, expenses and attorneys' fees from the inception of the suit through the resolution of the post-judgment attorneys' fees and sanctions issues.

This case has been one where Plaintiff's counsel's mantra has been "Shoot first and take prisoners … never. Just keep shooting." All the while the School Board and Husfelt are forced to go along a very expensive, time consuming and emotionally taxing ride. The Court and its staff are also forced to join this ride. When the ride is meritless someone other than Defendants should be required to pay for the ticket. When the ride is meritless and vexatious as it has been in this case, that person is Plaintiff's counsel and her law firm.

Defendants School Board and Husfelt individually request that this Court find they are entitled to sanctions against Plaintiff's counsel and her law firm pursuant to 28 U.S.C. §1927 based upon misrepresentations and lack of a factual or legal basis for asserting the claims that were made in this case, all of which have served to collectively become an abuse of the judicial process.

## IV.     Sanctions against Plaintiff's counsel under Rule 11

Defendant School Board served a Motion for Sanctions on Plaintiff's counsel on July 20, 2018.  A copy of that motion, which included a motion for sanctions pursuant to 28 U.S.C. §1927, is attached to this consolidated motion as Exhibit 4. Pursuant to Local Rule 7.1 an attempt was made to determine whether Plaintiff's counsel agreed with the motion.  Her response, via email, is attached as Exhibit 5. The response was sent within 20 minutes of the transmittal of the motion assuring counsel the issue had been "researched and researched."  It is a clear, deliberate and knowing rejection of the plea that she dismiss the claims against Defendant School Board.

Defendant School Board, however, does not pursue the recovery of attorneys' fees under Rule 11 which requires that such a motion be served but not filed until 21 days has passed, thus giving the recipient a safe harbor period to withdraw the challenged claims.  In this instance less than 21 days transpired before the entry of summary judgment in favor of the School Board. Strict compliance with the wording of Rule 11 has been confirmed by the Eleventh Circuit.[2]  *Peer v. Lewis*, 606 F.3d

---

[2] There is authority for the proposition that Rule 11's 21-day safe harbor provision may be waived.  *Rector v. Approved Fed. Sav. Bank*, 265 F.3d 248, 252 (4th Cir. 2001); *Joseph Giganti Veritas Media Group, Inc. v. Gen-X Strategies, Inc.*, 222 F.R.D. 299-306-307 (E.D. Va. 2004) (Plaintiffs "deliberately chose" and "made clear their intent" not to avail themselves of the 21-day safe harbor provision); *Hadden, et al. v. Cty. Bd. of Commissioners,* 121 F.3d 708 at *1 (6th Cir. 1997); *In*

1306 (11th Cir. 2010).  It is also precedent that the service and filing of a motion for sanctions pursuant to Rule 11 occur prior to the entry of final judgment.  *In re Walker*, 532 F.3d 1304 (11th Cir. 2008) (noting it follows a number of other Circuits on this point).

Rather, Defendants ask this Court to impose non-monetary sanctions which it determines are a sufficient deterrence for similar conduct in the future by Plaintiff's counsel.  Rule 11(c) authorizes a court to impose *sua sponte* appropriate sanctions against an attorney and her firm if she files a frivolous claim in violation of Rule 11.

Rule 11 states that the filing of a pleading by counsel is a certification that, "to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading is not being introduced to harass or for improper purpose; the claims are warranted by existing law; and the "factual contentions have evidentiary support."  It is now abundantly clear that paragraph 13 of the complaint, which reads:

> 13.   Upon information and belief, Meredith Higgins stated to at least one person, "Husfelt forced me to do this."

was not a true statement and there was no inquiry to confirm the same before the complaint was filed.  This same statement is then repeated numerous times in Plaintiff's Rule 26 disclosure, 5 supplements to the same and throughout discovery

---

re Kitchen, 327 B.R. 337, 361-62 (N.D. Ill. 2005) (Plaintiffs "deliberately and knowingly rejected that option" referring to the safe harbor provision of Rule 11).

responses.  Early on counsel for the Defendant School Board contacted those who made the decision to terminate Hale from the charter school position and learned there was no involvement by Defendants in such decision, but this quote and other "positions" taken by Plaintiff's counsel forced a lengthy and expensive discovery search to determine if it had any merit.  It did not.

Plaintiff's counsel is very bright. Plaintiff's counsel was admitted to the Florida Bar in 1988. She is a very experienced litigator commanding the highest rates. As the Court noted, many cases are filed by Marie A. Mattox. Perhaps too many.  Complaints originating from her firm are typically signed by her personally, not by others in her firm. She signed the Complaint in this case.  Plaintiff's counsel regularly tries cases in the Northern District and is well-versed with the Rules of Civil Procedure and the Rules of Evidence.

This is not the first time Plaintiff's counsel has pursued claims without a good faith basis[3] or engaged in conduct which multiplies the proceedings. This Court noted repeatedly during the hearing on Defendants' Motions for Summary Judgment that he intended to enter an Order to Show Cause, that he had admonished counsel on multiple occasions in the past, that she was likely going to "get away with it" this

---

[3] See for example the Order Granting Defendants' Motion for Sanctions [ECF.112] in *Glass v. City of Chattahoochee, et al.,* 4:16-cv-00543-WS-CAS, awarding sanctions against Plaintiff's counsel for *inter alia* continuing claims in contravention of the law and for the failure to allege or produce evidence of any conduct taken by a defendant to cause harm to the plaintiff.

time, but cautioned counsel that the day was coming. The day is here for at least non-monetary sanctions.

When counsel signs a pleading under Rule 11, she certifies to the Court and to all parties and all counsel that to the best of her knowledge and belief, "formed after an inquiry *reasonable under the circumstances,*" the pleading is not being presented for an improper purpose, such as to harass, the claims are warranted by existing law, and the factual contentions have evidentiary support. In this instance, none of those certifications is true. It is now obvious that there was no apparent investigation conducted by counsel and certainly not a reasonable investigation.

It is dubious that this lawsuit was Jared's idea. His deposition testimony in February 2017 in his parents' previous case made clear he was very happy with his current job and that he makes more money than he did at North Bay Haven. (Exhibit 6, Jared Hale deposition of February 28, 2017, p.16). The text messages offered in the case reflect him and his mother soliciting inadmissible opinions from friends as to the "real" reason he was terminated. Plaintiff had no personal knowledge of Husfelt being involved. He just heard enough rumor and conjecture from his mother to believe it was so. And Julie Hale too acknowledged in her deposition that she has no personal knowledge and no direct evidence of the claims made. The obligation was on Ms. Mattox to conduct her own analysis of the evidence and to tell her former and potential clients that there was no admissible evidence to support the claims.

[U]nder Rule 11, an attorney must make some reasonable inquiry into the facts and the law.  The reasonableness of the inquiry is a fact-based question, dependent on the circumstances of the case at hand. A court confronted with a motion for Rule 11 sanctions premised on the alleged frivolity of a claim must first determine whether the party's claims or assertions are objectively frivolous in view of the facts or law; if they are, the court must then determine whether the person who signed the pleadings would have been aware they were frivolous had he made a reasonable inquiry. An objective standard of reasonableness governs both inquiries. A legal claim is frivolous if no reasonably competent attorney could conclude that it has any reasonable chance of success or is a reasonable argument to change existing law. A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis, because it is supported by no evidence or only by "patently frivolous" evidence.

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,* 851 F. Supp. 2d 1299, 1308 (S.D. Fla. 2011), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.,* 503 Fed. Appx. 677 (11th Cir. 2012) (internal citations omitted). An attorney's duty to analyze the facts and law that support a pleading or motion is non-delegable. *Id.*

The purpose of Rule 11 is to deter, not compensate, and courts can impose a number of sanctions to that end. The Advisory Committee Notes to Rule 11 suggest a variety of sanctions available such as striking the offending paper, issuing an admonition, reprimand or censure, requiring participation in seminars or other educational programs, or referring the matter to disciplinary authorities. The district court has wide latitude to determine what sanctions should be imposed for a Rule 11 violation, and may impose non-monetary sanctions when appropriate to deter

repetition of the offending conduct. *See Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 657 (7th Cir. 2003).

Other courts have entered or recognized the availability of non-monetary sanctions under Rule 11 as follows:

- *In re Engle Cases*, 283 F. Supp. 3d 1174, 1257-8 (M.D. Fla. 2017) (court referred the matter to the Florida Bar to investigate whether the attorneys violated the Florida Rules of Professional Conduct by pursing lawsuits lacking any factual basis; the Court also publicly reprimanded the attorneys via Order).
- *S.E.C. v. Smith*, 798 F. Supp. 2d 412, 442 (N.D. NY 2011) (formal admonishment in Order as sanction).
- *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) ("Other sanctions that could be appropriate in some circumstances, and that may take the place of a monetary award, include publication, an order barring an attorney from appearing for a period of time, reprimand, dismissal of baseless claims or defenses, or even ordering 'the attorney[ ] who violated the rule to circulate in [his or her] firm a copy of the opinion in which the pleadings were criticized.' ") (*quoting Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987)).
- *Pickern v. Pier 1 Imports*, 339 F.S upp. 2d 1081, 1091 (E.D. Cal. 2004) (finding public acknowledgment sufficient Rule 11 sanction where circumstances suggested it was likely to deter future offensive conduct by counsel).
- *Moser v. Bret Harte Union High School Dist.*, 366 F. Supp. 2d 944, 988 (In light of attorney's blatant misrepresentations of fact and applicable law, and her frequent frivolous objections attorney was sanctioned by being publicly reproved and ordered to attend 20 hours of CLE ethics training).
- *Balthazar v. Atlantic City Medical Center*, 279 F. Supp. 2d 574, 595-6 (D. N.J. 2003) (attorney was required to attend and complete two CLE courses within twelve months, one focusing on Federal Practice and Procedure and the other on Attorney Professionalism and the Rules of Professional Conduct; "As a result of attending these continuing legal education courses, hopefully [the attorney] will become familiar with

the legal principles that have apparently escaped him during the course of this litigation.").

- *Obert v. Republic Western Ins. Co.*, 264 F. Supp. 2d 106, 111 (attorney's pro hac vice status was revoked as a sanction).

- *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1190 (E.D. Tx. 1996) (attorney who had no evidentiary basis for asserting in his motion to withdraw from representing client that client would not be prejudiced thereby, was subject to sanctions of $2,500 fine, public reprimand, and completion of ten hours of continuing legal education in area of ethics).

- *Bergeron v. Northwest Publications, Inc.*, 165 F.R.D. 518, 522 (Attorney who filed motions on behalf of litigant which did not comply with the federal rules of civil procedure would be required to successfully complete a course in the federal rules of civil procedure and local rules of federal district court, a course to be taught by professor at accredited law school and consisting of at least 40 hours of individualized instruction, in addition to the continuing legal education required by rules of Minnesota Supreme Court.).

- *Curran v. Price*, 150 F.R.D. 85, 86-7 (D. Md. 1993) (Appropriate sanction under Rule 11 for attorney having filed notice of removal in case that was not removable, in light of fundamental precept that presence of federal defense does not make a case removable, was to require counsel to copy out, legibly, in his own handwriting, text of portion of federal practice book, together with text of that section's update.).

- *Lelsz v. Kavanage*, 137 F.R.D. 646, 656 (N.D. Tx. 1991) (Texas Assistant Attorney General would be removed from further participation in litigation, following completion of discovery for upcoming hearing, as sanction for engaging in improper litigation conduct in class action challenging care and treatment provided for mentally retarded citizens of Texas.).

- *Kendrick v. Zanides*, 609 F. Supp. 1162 (N.D.Cal.1985) (court suspended the plaintiff's attorneys from practice; "Attorneys also have obligations as officers of the court. On the face of it, the conduct of plaintiff's counsel ... raise[s] questions about their fitness to practice in the federal district court.").

- *Enderson v. Department of Public Safety and Correctons*, 901 F.2d 1288, 1296-7 (5th Cir. 1990) (ordering attorney to read and brief facts and law of cases cited in court's rulings).

- *Sparrow v. Reynolds*, 646 F.Supp. 834, 840 (D.D.C. 1986) (Plaintiff would be required to seek judicial permission before filing any new civil action with district court, certifying that he is raising claims that he has never before raised and that no federal court has decided on merits, as sanction for his filing 18 complaints alleging same groundless cause of action).

- *Crooker v. U.S. Marshals Service*, 641 F. Supp. 1141, 1143 (D.D.C. 1986) (As sanction under good-faith pleading rule, district court would enter order requiring plaintiff, who had filed plethora of Freedom of Information Act and/or Privacy Act suits over the last eight years and failed routinely to oppose motions to dismiss, when filing any further such actions that named any of the previous defendant agencies as defendants, to attach thereto memorandum of law stating why doctrine of res judicata would not bar the intended suit.).

This Court is the sole arbiter of appropriate sanctions which would be sufficient to deter future misconduct by Plaintiff's counsel. However, as a starting point, counsel suggest the following:

- Admonition in an order.

- Requirement that every Complaint filed by counsel or her firm directly within the USDC for the Northern District of Florida include a statement in the following form:

   I, Marie A. Mattox, have read Federal Rule of Civil Procedure 11 in its entirety and understand that I have a nondelegable duty to analyze the factual basis for the claims stated herein. I certify that if an evidentiary hearing were held today, I would be able to present admissible evidence sufficient to state a prima facie case of the claims brought herein.

   I, Marie A. Mattox, have personally reviewed the legal basis for the claims stated herein and:
   ___ know them to be warranted by existing law; or
   ___ know them to be warranted by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

I, Marie A. Mattox, understand that if the above certifications by me are found not to be true, I will personally be subject to sanctions by the Court which may include monetary and non-monetary sanctions.

- For any case filed by counsel or her firm in state court which is removed to the Northern District of Florida, counsel shall file a statement certifying the matters above within 14 days of removal.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants School Board and Husfelt request that this Court enter an order confirming Defendants are entitled to attorney's fees against Plaintiff, Jared Hale, individually and to attorney's fees and sanctions against Marie A. Mattox, Esq. and her law firm; reserving jurisdiction to determine the amount of any attorney's fees or sanctions pursuant to the authority cited herein. Defendants further request this Court enter non-monetary sanctions against Plaintiff's counsel in accordance with Federal Rule of Civil Procedure 11 sufficient to deter future vexatious conduct of counsel.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Pursuant to Local Rule 7.1(B), Northern District of Florida, the undersigned counsel for the School Board and Husfelt individually sent correspondence to Plaintiff's counsel, Marie A. Mattox, outlining Defendants' concerns and the basis for this Motion in a good faith effort to resolve this issue prior to the filing of the Motion. Plaintiff's counsel responded via electronic mail to counsel for the School Board opposing the relief requested herein. No response has yet been provided to counsel for Husfelt.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

The undersigned certifies that the forgoing Memorandum of Law complies with Local Rule 7.1(F) because it contains only 7,783 words.

Respectfully submitted this 16th day of August 2018.

| /s/ D. Ross McCloy, Jr. | /s/ Gwendolyn P. Adkins |
|---|---|
| D. Ross McCloy, Jr. FBN.: 262943 | Gwendolyn P. Adkins, FBN: 0949566 |
| **HAND ARENDALL HARRISON SALE** | **COPPINS MONROE, P.A** |
| P.O. Drawer 1579 | 1319 Thomaswood Drive |
| Panama City, FL 32402 | Tallahassee, Florida 32308 |
| Telephone: (850) 769-3434 | Telephone: (850) 422-2420 |
| Facsimile: (850) 769-6121 | Facsimile: (850) 422-2730 |
| | |
| ATTORNEY FOR THE SCHOOL BOARD OF BAY COUNTY, FLORIDA | ATTORNEY FOR DEFENDANT HUSFELT IN HIS INDIVIDUAL CAPACITY |

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5(b)(3) and N.D. Florida Local

Rule 5.1, this document is being filed electronically and service shall be through the

Court's transmission facilities on all persons appearing before this Court.

*/s/ Gwendolyn P. Adkins*
Attorney