# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

JARED HALE,

        Plaintiff,

v.                                CASE NO.  5:17cv265-RH-GRJ

BAY COUNTY SCHOOL BOARD
and WILLIAM HUSFELT,

        Defendants.

_____/

## ORDER DETERMINING ENTITLEMENT TO ATTORNEY'S FEES

The defendants prevailed on summary judgment and now seek an award of attorney's fees. This order determines that they are entitled to an award covering some but not all of their fees.

I

The plaintiff Jared Hale was a teacher and football coach at a charter school in Bay County, Florida. He was fired as coach; his teaching position was not renewed; and he unsuccessfully applied for a teaching position at a traditional Bay County public high school. In this action Mr. Hale asserted a tortious-interference claim under state law and a federal constitutional claim under 42 U.S.C. § 1983.

He originally named as a defendant only the Superintendent of Schools, William Husfelt, in his official and individual capacities. The parties stipulated to substitute the Bay County School Board as a defendant in place of Mr. Husfelt in his official capacity.

The case proceeded against the School Board and Mr. Husfelt individually. Both defendants prevailed by summary judgment. Mr. Hale appealed, and the appeal remains pending. In the meantime, as required under this district's bifurcated attorney's fee procedure, *see* N.D. Fla. Loc. R. 54.1, the defendants have moved for a determination that they are entitled to a fee award.

This order grants the motion in two respects. First, both defendants are entitled to a fee award on the state-law claim based on the Florida offer-of-settlement statute, Florida Statutes § 768.79. Second, Mr. Husfelt is entitled to a fee award on the federal claim because, from the outset, that claim was squarely foreclosed by binding circuit precedent; the claim was "frivolous, unreasonable, or groundless." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *see* 42 U.S.C. § 1988. The state-law award will run only against Mr. Hale. The federal-law award will run not only against Mr. Hale but also against his attorney, Marie A. Mattox, and her law firm. *See* 28 U.S.C. § 1927.

II

A

Early in the litigation, the School Board offered to pay Mr. Hale $250 to settle his state-law claim against the School Board. Mr. Husfelt offered to pay Mr. Hale $100 to settle his state-law claim against Mr. Husfelt. The offers were formally served in compliance with Florida Statutes § 768.79. Each defendant had good grounds to believe at that time that the defendant would eventually prevail on the claim. But this result was not certain—the defendants had at least some exposure on these claims.

Quite predictably, Mr. Hale rejected the offers. It is likely that the defendants made the offers not expecting them to be accepted but simply to set up a motion for attorney's fees if the defendants prevailed. Even so, as the defendants knew, acceptance was possible and, if it occurred, would be binding.

The defendants also made offers addressing the federal claims, but the Florida offer-of-settlement statute does not apply to federal claims in federal court. *See Design Pallets, Inc. v. Gray Robinson, P.A.*, 583 F. Supp. 2d 1282, 1285 (M.D. Fla. 2008); *see also Earthcam, Inc. v. OxBlue Corp.*, 658 F. App'x 526 (11th Cir. 2016) (addressing the analogous Georgia statute). The defendants do not assert the contrary. The defendants have not sought fee awards on the federal claims based on their offers of settlement.

B

Parts of this order's analysis of the Florida offer-of-settlement statute closely track *Koehle v. Tri-State Maritime Services, Inc.*, No. 5:16cv297-RH-GRJ (N.D. Fla. July 19, 2018) (unpublished order).

The statute allows a defendant to recover fees if the plaintiff rejects a qualifying offer and the plaintiff ultimately loses the case or recovers no more than 75% of the offer. Fla. Stat. § 768.79(1). The statute allows a plaintiff to recover fees if the defendant rejects a qualifying demand for judgment and the plaintiff ultimately recovers at least 25% more than the demand. *Id*. A party may avoid a fee award by showing that an offer "was not made in good faith." *Id*. § 768.79(7)(a).

C

An offer under the statute may address fewer than all the claims in a case. *See Harris Specialty Chems., Inc. v. Punto Azul S.A. de C.V.*, 12 So. 3d 809, 810 (Fla. 3d DCA 2009) (citing *Jacksonville Golfair, Inc. v. Grover*, 988 So. 2d 1225, 1227 (Fla. 1st DCA 2008)). It thus was permissible for a defendant to make an offer that addressed the state-law claim and did not address the federal claim as part of the same offer. Mr. Hale does not assert the contrary.

page 5 of 18

D

The statute does not apply when a plaintiff has demanded equitable relief as well as damages and the defendant's offer of settlement requires a release of not only the damages claim but also the equitable-relief claim. *See Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 372 (Fla. 2013). This is so even when the claim for equitable relief lacks serious merit. *Id.*

Mr. Hale says this makes the statute inapplicable here, but that is incorrect. Each count of the complaint included its own description of the relief Mr. Hale sought on that count. Mr. Hale explicitly sought equitable relief on the federal claims, *see* Compl., ECF No. 1, at ¶¶ 54, 70, but he did not seek equitable relief on the state-law claims, *see id.* at ¶¶ 35, 42. He sought an award of damages on the state-law claims, nothing more. The statute applies.

This reading of the complaint is confirmed by the overall prayer for relief set out at the end of the complaint. There the complaint demanded equitable relief "under the applicable counts set forth above." *Id.* at 17 ¶ (b). In the very next paragraph, the complaint demanded damages without a limitation to "the applicable counts set forth above." *Id.* at 17 ¶ (c). This phrasing made sense: the complaint sought equitable relief on only some counts (the counts based on federal law) but sought damages on all counts.

This reading of the complaint makes sense in another respect as well. The appropriate relief on a tortious-interference claim of this kind ordinarily is an award of damages. There is no reason to believe Mr. Hale sought or could have presented any colorable claim for injunctive or other equitable relief on this claim.

Finally, even if the complaint could somehow be read to demand equitable relief on the state-law claims, the demand would properly be characterized as surplusage. The plaintiff never meaningfully sought or had any basis for equitable relief on the state-law claims. This was, in short, a case in which the true relief sought on the state-law claims was an award of damages, nothing more and nothing less. When, as here, the "true relief" sought is an award of damages, § 768.79 applies. *See Tower Hill Signature Ins. Co. v. Javellana*, 238 So. 3d 372, 375-78 (Fla. 3d DCA 2017) (collecting cases); *Faith Freight Forwarding Corp. v. Anias*, 206 So. 3d 753 (Fla. 3d DCA 2016); *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 883 (11th Cir. 2015). *Tower Hill* and *Yacht Club* both involved claims for declaratory, not injunctive relief, but the complaint in *Faith Freight* referred to "equitable relief," and in any event the principle is the same: when the true relief sought on a claim is a damages award, § 768.79 applies. A plaintiff cannot render the statute inapplicable by clever but ultimately inconsequential pleading.

In sum, on the state-law claims, on any fair reading, this complaint demanded, and the true relief sought was, an award of damages, nothing more. Mr. Hale's contrary assertion blinks reality. The offer-of-settlement statute, § 768.79, applies.

## E

If writing on a clean slate, one could argue both sides of the question whether a state statute of this kind applies when a state-law claim is litigated in federal court. But the law of the circuit is settled: the statute does apply. *See, e.g.*, *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1258 (11th Cir.2011); *McMahan v. Toto*, 311 F.3d 1077 (11th Cir. 2002).

## F

A recurring pattern in the reported decisions is an obviously unacceptable, low-ball offer early in a case—for example, a $500 offer in a case in which damages far exceed that amount and liability is uncertain. This case does not quite fit that pattern. Mr. Hale faced substantial obstacles not only on liability but also on damages. The defendants' offers, while low, were not as plainly nominal as offers in many of the reported cases.

Still, to accept these offers would have been, in practical effect, to abandon these claims, or nearly so.

The Florida Supreme Court has not addressed the issue of whether an obviously unacceptable, low-ball offer is made in good faith. Florida district courts of appeal have repeatedly said that such an offer *can* be made in good faith. *See, e.g.*, *Fox v. McCaw Cell. Commc'ns of Fla., Inc.*, 745 So. 2d 330, 333 (Fla. 4th DCA 1998) (stating that a nominal offer is made in good faith if the defendant has a reasonable basis to believe its exposure is nominal). And district courts of appeal have said that whether the defendant believes the plaintiff might accept the offer is not a factor in the analysis. *See, e.g.*, *Arce v. Wackenhut Corp.*, 146 So. 3d 1236, 1238 n.3 (Fla. 3d DCA 2014) (collecting cases).

The Eleventh Circuit addressed this issue in *McMahan*. The court said a nominal offer "can be valid if the offerors have 'a reasonable basis at the time of the offer to conclude that their exposure was nominal.' " 311 F.3d at 1083 (quoting *Fox*, 745 So. 2d at 333). And the court suggested that when a defendant ultimately prevails, the defendant must have had a reasonable basis for concluding its exposure was nominal: "To accept in the same case in which a party did prevail the notion that there was no reasonable basis for that party prevailing would require self-contradiction on a scale that we are unwilling to consider." *Id*.

In short, under *McMahan* and a host of Florida court of appeal decisions, the defendants here are entitled to a fee award.

# G

To be sure, a federal court in a diversity case need not follow the decisions of Florida district courts of appeal if there is "some persuasive indication" that the Florida Supreme Court "would decide the issue differently." *Id.* at 1080. Before and after *McMahan*, there have been many decisions of Florida district courts of appeal, not all lining up perfectly with *McMahan* and *Fox. See, e.g.*, *Peoples Gas Sys., Inc. v. Acme Gas Corp.*, 689 So. 2d 292, 300 (Fla. 3d DCA 1997) (stating that a nominal offer could be made in good faith when "the undisputed record strongly indicated" that the defendant had "no exposure"); *Event Servs. Am., Inc. v. Ragusa*, 917 So.2d 882 (Fla. 3d DCA 2005) (following *Peoples Gas* and affirming the trial court's holding that a nominal offer was not made in good faith); *Eagleman v. Eagleman*, 673 So. 2d 946, 948 (Fla. 4th DCA 1996) ("[T]rial courts should view with considerable skepticism nominal offers which bear no reasonable relationship to damages and which are not founded upon a reasonable and realistic assessment of liability.").

As an original matter, one might well question whether an obviously unacceptable, low-ball offer meets the statutory "good faith" requirement in a case in which a plaintiff has a colorable prospect of success. The statute's purposes include avoiding unwarranted litigation and encouraging reasonable settlements. Awarding fees to defendants based on obviously unacceptable, low-ball offers does

not encourage settlements. *See Eagleman*, 673 So. 2d at 948 ("Such nominal offers cannot advance the statutory purpose of encouraging settlement, but instead serve no other purpose than to lay a predicate for a subsequent award of attorney's fees . . . .").

In addition, one might well conclude that the Florida Legislature intended the statute to be neutral between plaintiffs and defendants. Under the plain terms of the statute, each side can make an offer. In responding to an offer, each side is allowed a 25% margin of error. At least on its face, this is neutral. Other Florida attorney's fee statutes that apply across the board—not just to claims on specific subjects—are similarly neutral. *See* Fla. Stat. § 57.105(1) (providing for a fee award when a party asserts an unsupported "claim or defense"); *id*. § 57.105(7) (providing for a fee award to a prevailing "plaintiff or defendant" when a contract would have allowed a prevailing opponent to recover fees).

Neutrality vanishes, though, if an obviously unacceptable, low-ball offer triggers the right to recover fees under § 768.79. In practical effect, by making such an offer, a defendant can ensure that if it prevails on liability, it will always be able to recover fees, because zero is always less than 75% of any offer. But a plaintiff has no corresponding way to ensure that, if the plaintiff prevails on liability, the plaintiff will be able to recover fees. If a defendant's obviously unacceptable, low-ball offer triggers the statute, neutrality is lost: to recover fees,

the plaintiff will have to offer a meaningful compromise and beat it by 25%,

precisely as the statute contemplates, but a defendant will only have to prevail on

liability, with or without offering a meaningful compromise.

One might well conclude that barring fee awards based on obviously

unacceptable, low-ball offers is what the Florida Legislature had in mind when it

wrote the good-faith exception into the statute.

But whatever one might conclude as an original matter, *McMahan* and the

substantial weight of authority in the district courts of appeal upholding fee awards

based on nominal offers are to the contrary. There is no "persuasive indication"

that the Florida Supreme Court would decide this issue differently.

Moreover, the case at bar is an especially poor candidate to buck the trend.

Mr. Hale's tortious-interference claim was thin. If obviously unacceptable, low-

ball offers ever can be made in good faith, the offers to Mr. Hale measure up. Mr.

Hale has not carried the burden of showing the contrary.

### III

### A

Under 42 U.S.C. § 1988, a "prevailing party," other than the United States,

may recover attorney's fees in an action under listed civil-rights statutes, including

42 U.S.C. § 1983. A plaintiff who prevails ordinarily is entitled to a fee award, but

a prevailing defendant is entitled to a fee award only under the standard applicable

to Title VII claims, that is, only if the court finds that the plaintiff's "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).

## B

The School Board asserts it has met this standard, but it has not. Mr. Hale's § 1983 claim against the School Board was thin, but it cannot be said that the claim was frivolous, unreasonable, or groundless.

## C

For Mr. Husfelt, the result is different. Mr. Hale alleged that his parents had sued the defendants and others in a prior case. Mr. Hale alleged that Mr. Husfelt took the actions at issue in this new case—having Mr. Hale fired as the charter school's coach, nonrenewed as a teacher there, and not hired as a teacher at the traditional high school—in retaliation for his parents' prior lawsuit. Mr. Hale alleged that this violated his First Amendment right to associate with his parents. Confirming the nature of the claim, Mr. Hale entitled it, "First Amendment retaliation for protected association." Compl., ECF No. 1, at 11 (capitalization altered).

The difficulty is that just 27 days before Mr. Hale filed this lawsuit, the Eleventh Circuit squarely held that a First Amendment association claim of

precisely this kind was barred by qualified immunity. *See Gaines v. Wardynski*, 871 F.3d 1203 (11th Cir. Sept. 21, 2017). Qualified immunity applies to damages claims against public officials and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). *See generally Carroll v. Carman*, 135 S. Ct. 348 (2014); *Hope v. Pelzer*, 536 U.S. 730 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Thus a public official may be held individually liable only if the official's conduct violated clearly established law. There was no change in the clearly established law between the time of the alleged violation in *Gaines* and the time of Mr. Husfelt's alleged violation.

Any competent attorney performing the research necessary under Federal Rule of Civil Procedure 11 before filing this lawsuit would have found *Gaines* and would have recognized that it was fatal to the § 1983 claim against Mr. Husfelt. The claim should not have been filed at all or, at most, should have been filed with an explicit acknowledgement that the claim could succeed only if the Eleventh Circuit en banc or the Supreme Court changed the law as established by *Gaines*.

Mr. Hale made no such acknowledgement. He simply proceeded with a claim that *Gaines* squarely foreclosed. When Mr. Husfelt moved for summary judgment, citing *Gaines*, Mr. Hale responded in opposition, still not acknowledging *Gaines*. Mr. Hale relented only when, at oral argument on the summary-judgment motion, after the defendants presented their arguments, I

explicitly asked about *Gaines*. In response to the question, Mr. Hale acknowledged for the first time that *Gaines* was fatal. Mr. Hale did not assert that the claim was filed or had been pursued to preserve the issue for en banc or Supreme Court consideration. He said, in effect, that overlooking *Gaines* was a mistake.

Mr. Hale did all this through his attorney, Ms. Mattox. During the summary-judgment hearing, she said she first read *Gaines* on the morning of the summary-judgment hearing. She said a "remote lawyer" had worked on this case and had since been fired. But the "remote lawyer" did not sign the complaint or the summary-judgment response or otherwise pursue the claim; Ms. Mattox did. She certified the filings under Federal Rule of Civil Procedure 11. She is responsible for their content. At the hearing, she acknowledged this.

In sum, Mr. Husfelt is entitled to a fee award as the prevailing party on the § 1983 claim against him. The claim "was frivolous, unreasonable, or groundless" from the outset, and Mr. Hale "continued to litigate after it [even more] clearly became so." *Christiansburg*, 434 U.S. at 422.

IV

Under 28 U.S.C. § 1927, a court may award fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." As both sides agree, this requires "conduct tantamount to bad faith." *Avirgan v. Hull*, 932 F. 2d 1572, 1582 (11th Cir. 1991). But "tantamount" to bad faith does not mean

actual subjective bad faith. "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)). The defendants cited these authorities in their fee motion, but Mr. Hale responded by ignoring the word "tantamount" in *Abirgan* and ignoring *Barnes* altogether.

The defendants assert with considerable force that Ms. Mattox multiplied these proceedings from top to bottom, pursuing claims that were factually as well as legally unfounded, and soldiering on when discovery failed to turn up factual support for the claims. But with one exception, pursuing the claims was not so unreasonable or vexatious as to warrant a fee award under § 1927.

The exception is the § 1983 claim against Mr. Husfelt. As set out above, that claim was squarely foreclosed from the outset by the Eleventh Circuit's decision in *Gaines*. In the Eleventh Circuit's phrasing, Ms. Mattox "recklessly raise[d] a frivolous argument." *Barnes*, 158 F.3d at 1214. And Ms. Mattox did not abandon the claim even when the defendants cited *Gaines*. Instead, she filed a memorandum in opposition to the defendants' summary-judgment motion, including on this issue. Ms. Mattox abandoned the claim only after the defendants presented their argument at the summary-judgment hearing.

To be sure, Ms. Mattox asserts she did not read *Gaines* until the morning of the summary-judgment hearing and did not know until that time that this claim was squarely foreclosed by controlling law. But she is of course responsible for the decision not to do the necessary work herself and instead to rely on an attorney she hired. And regardless of how the work was allocated, it is clear that a diligent inquiry was not made before the lawsuit was filed. Failing to perform a diligent inquiry is sufficient to support a finding of subjective bad faith. At the very least, proceeding in the face of an easily located, squarely binding precedent shows recklessness. *Barnes* defined bad faith to include recklessness of this kind.

A court should award fees under § 1927 only in egregious circumstances. This is my first such award in memory—perhaps my first in 22 years as a district judge. Attorneys are duty-bound to represent their clients zealously within the bounds of the law. Taking on hard cases, even thin cases, is not improper. But before filing an action, asserting a defense, or filing another paper, an attorney must make "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). The attorney who presents a paper to the court certifies that the attorney has done so. Had a diligent inquiry been made here, the § 1983 claim against Mr. Husfelt would not have been filed. By asserting that claim and pursuing it almost to the bitter end, Ms. Mattox and her firm multiplied the proceedings unreasonably and vexatiously. Mr. Husfelt is entitled to a fee award under § 1927.

This makes it unnecessary to decide whether Ms. Mattox's abandonment of this claim at the summary-judgment hearing precludes a fee award under Rule 11. *See* Fed. R. Civ. P. 11(5)(B) (precluding Rule 11 monetary sanctions on the court's own motion unless, "before voluntary dismissal or settlement" of the claim at issue, the court issued a show-cause order). But for this provision, attorney's fees would be awarded against Ms. Mattox and her firm not only under § 1927, but also under Rule 11.

## V

The fees that will be awarded based on this order will be the fees corresponding to the reasons for the award. For a state-law claim against a defendant, this means fees incurred by that defendant on that claim from the date of the defendant's offer of judgment. For the § 1983 claim against Mr. Husfelt, this means fees incurred on that claim. Fees that would have been incurred anyway in defense of other claims will not be included.

The defendants also have requested additional nonmonetary sanctions against Ms. Mattox. As a matter of discretion, additional sanctions will not be awarded. But this gratuitous advice is offered (and has been offered more than once in the past): Ms. Mattox should turn down cases she does not have time to handle at a level consistent with her ability.

VI

For these reasons,

IT IS ORDERED:

1. The motion to determine entitlement to attorney's fees, ECF No. 56, is granted in part and denied in part.

2. It is determined under Local Rule 54.1 that the defendants are entitled to an award of attorney's fees as set out in this order.

3. The procedures in Rule 54.1 will govern further proceedings to determine the amount of the fee award, except that the deadline for the defendants' filings under Rule 54.1(E) is 30 days after the Eleventh Circuit issues a mandate affirming the August 2, 2018 judgment or dismissing the pending appeal. No motion to determine the fee amount may be filed prior to the resolution of any appeal.

SO ORDERED on March 25, 2019.

s/Robert L. Hinkle
United States District Judge